Caboso. May it please the court, my name is Roland Acevedo and I represent the appellant Luis Es Caboso. We contend that the appellant's sentence was procedurally unreasonable because the district court relied on two clearly erroneous factual findings. At sentencing, the district court stated its rationale for sentencing Mr. Es Caboso at the very top of the guideline. According to the court, and I quote, defendants disregard for the law and unwillingness to reform his behavior as evidenced by his noncompliance with his bail conditions. An unauthorized access of the internet indicates a substantial sentence is required to protect the public from further crimes of the defendant. Close quote. With respect to the portion that deals with the noncompliance with the bail conditions, those conditions first appeared in pretrial services confidential memorandum to the court dated February 22, 2017. And the two violations at issue here are, one, that the appellant failed to tell the court at the bail hearing and later he failed to tell pretrial services that his stepfather, rather, was a convicted sex offender, and two, that appellant allegedly made statements during a group therapy session about creating a website that allowed people to access child pornography for a fee and that he could circumvent the pretrial services monitoring software on his computer. The problem with those two alleged violations is that they were both incorrect. They were not true. There was no condition of appellant's bail that required him to disclose to the magistrate judge or pretrial services that his stepfather was a sex offender. And, in fact, that issue really is moot because when the appellant was arrested at his apartment in Staten Island, he told the FBI. He did tell the FBI. But he didn't, but you're not arguing that he didn't tell pretrial services and didn't tell the court whether or not he had an obligation to, are you? No, he didn't have an obligation. He didn't know he had an obligation. But the government knew through the FBI agent that he disclosed that his stepfather was a sex offender. Reading the district court, the transcript of sentencing, I mean, the government says that the district court didn't rely on a finding about this proposition. And I'm having difficulty seeing where there's anything that's made of it other than just repeating that it's part of what the pretrial services report said. Am I missing something? Sure. That's why I started off with the district court's quote as to why he sentenced at the top end of the guideline. It was based on two things. Appellant's unwillingness to reform his behavior as evidenced by his noncompliance with his bail conditions. So when they had the bail violation proceeding, those two conditions were found to be justified, I guess is the word, proven. And those two conditions were used by the district judge during the sentencing. That's what he's referring to when he says the violations of the bail conditions. The fact is that also in two separate instances, at sentencing he adopts the findings, the factual findings in the presentence report, which include those errors. And then later the district court issues its own memorandum in order regarding the reasons for its sentencing. And once again, the district court adopts the findings in the presentence report, including those two findings which are factually incorrect. So I'd like to jump, move forward quickly to the ineffective counsel claim, if I may. Because I understand that this court is always reluctant to hear ineffective counsel claims, mostly because they're not fully developed on the record. I submit to you that this case is an exception, and that resolution of the claim would be beyond all doubt. The case here with respect to ineffective counsel is fully developed in the existing record. And we submit that it would be in the interest of justice for the court to hear and decide the claim, because it really is intertwined with that first issue with respect to counsel not bringing up the factual inaccuracies in the presentence report that the court relied on. The issue we submit is also preserved for appellate review, because during the defendant's visit to the district court at sentencing, Mr. Escobosa stated that he felt that his attorney was missing proof of points, and that he knew his case better than his attorney. Escobosa also said that he wished his attorney and himself had communicated better. He also alerted the court to arguments that counsel had missed. For instance, he said that he had missed the pre-trial or bail release by manipulating the pre-trial services installed software, because at the time he was in the group session, there was no software on his record. You are arguing that on this record, without the benefit of an explanation from counsel, for example, we have enough to determine that there was ineffective assistance of counsel. I do. Is that what you're really arguing? Excuse me? Is that really what you're arguing? I am, Judge. This counsel only represented him in two aspects of this case, the violation proceeding and the sentencing, because there was a plea. There was no other proceedings, no suppression, no trial. Counsel failed to submit findings of fact and conclusions of law with respect to the violation proceeding. Those findings of fact, which were incorrect, were then used against him at the sentencing. Then with respect to the sentencing, she didn't submit a sentencing memorandum. So all she submitted on the day of sentencing was a letter to the court that included a letter of support, and then in court she read a statement from a therapist that had treated Mr. Escobosa years before. She didn't submit a sentencing memorandum, which I would submit to this court is the fundamental piece of representation if you are going to be effective in a plea case. That's what the court has to focus on. That's where you have to get your arguments across. And I'm assuming if she did that, that she would have raised the issue we raised, that there were errors that the court was relying upon in those two factual findings. And I don't think those two factual findings are up for debate. The court may not have found them in the first instance, the district court, but the district court clearly adopted them as his own findings. Thank you. May it please the Court. Kevin Trial for the United States. Your Honors, Mr. Escobado, I think, simply misunderstands the record in some important respects. He spends a lot of time speaking about the violation reports, which, of course, were allegations from pretrial, but really played very little to no role in the subsequent proceedings, including two days of testimony. There were, of course, allegations in those reports that generated the need to have that hearing. But during the hearing, the testimony didn't concern Mr. Escobado's alleged statements in therapy, nor did they concern his father's status, his stepfather's status, rather. The court, of course, proceeded over those and, as Your Honors will have seen in the record, was very active in even questioning the witnesses at various times, certainly aware that the government was not proceeding on those theories. Now, the seriousness of the allegation about what Mr. Escobado had said in therapy certainly warranted examination by both the investigating agents, and that's noted in the PSR that it was referred to them, and by the court. He was, of course, at that time under the court's supervision. And it was the seriousness of that allegation that led eventually to the court deciding that we needed to have the FBI review Mr. Escobado's computers, and that in turn led to several violations that actually did form the basis of the district court's remand and part of the sentencing. And that is, I think one of those deserves a little special attention because my adversary notes it in his reply brief, and I think he misunderstands. There were two episodes, one involving Internet blocking software and another involving Internet monitoring software. So in January of 2016, after Mr. Escobado's arrest, he has a home-built computer. He says he doesn't want to pay for monitoring software, so none is installed. In January of 2016, he says he wants to, at that time, use his home-built computer for installed games and other purposes that don't require Internet access. So pretrial installs Internet blocking software at that point. Between January and August, he's using his home-built computer with Internet blocking software. In August, pretrial receives Gmail emails from him, which leads to a series of events that causes pretrial to say, we want to install additional software. At that point in September, they take his home-built computer, they try to install Internet monitoring software, and at that point realize they can't because of the number of drives and the technical issues they have. They don't return that to him. They keep it from that point on. In November of that year, Mr. Escobado purchases a laptop, sealed, brings it to pretrial, pretrial installs Internet monitoring software on that separate computer. Now, between January 16 and August 16, Mr. Escobado is using the home-built computer with pretrial services Internet blocking software on it. The FBI analysis subsequently demonstrates that there were Internet artifacts from that time period on the computer. So this is, I think, in 13 and 14 of our brief with transcript citations. Amazon, Yahoo, not unlawful sites, but sites nonetheless that in the government's view and subsequently in the court's view made clear that he was able to circumvent the blocking software in order to access the Internet. That's one category. The second thing is the Internet monitoring software on the laptop. In spite of that monitoring software, Mr. Escobado, the FBI analysis showed that he visited two sites that were prohibited under the terms of his bond, Pirate's Bay and Omegle. Those were found by the FBI, the artifacts related to those. There was never a discussion or an allegation about the content or even frankly about the timing other than that it was brought to pretrial sealed, that the software was installed, and the artifacts concerning those two websites was later found by the FBI. So the reasonable inference being the visit happened between the unsealing of that computer and the time it was seized. So there's no question about impossibility. I think as he, my adversary suggests, not only was the PSR wrong, but this was in fact impossible. That's plainly not true. There were two different things happening. And at the time of sentence, there were a number of violations that the court found very reasonably to have been serious and significant in light of those conditions. Those were all part of the sentence. The court's description of the procedural posture up to that point is just simply not a factual finding. It's not stated as such in the PSR and doesn't play that role in the opinion. So in the 3553A factors either it's sentencing or in the written opinion. So I don't think there's any reason to believe the district court erred in making those findings, nor was there a reason for counsel to have objected to those things because the court would have said, are you objecting to the fact that pretrial told me that, because that's plainly true, and there would have been no reason to take it out of the PSR. So the reference, when the district court references violating bail conditions, he's, by your reading of the transcript, referring back to the violations that were found with regard to computer access. I think that's clear, Your Honor. And I think one important point about that is I don't think we typically read a district judge's sentencing memorandum as we would an ambiguous statute. He's talking, he presided over two days of hearings, participated actively. I don't think there's a shred of evidence to suggest he misunderstood what the government was doing. And, in fact, the government submitted findings of fact after the hearing. Nowhere is there any reference whatsoever to the alleged statement during therapy. And there is, I believe in the government's statement of facts, a factually correct statement that pretrial learned about the stepfather's conviction from a background check rather than from him, but not that that was a violation of conditions. It was just, it was true. So I don't think there's any reason to believe the district court misunderstood that, and for that reason, I think that from that misperception of the record, both the procedural reasonableness, I think the substantive reasonableness and the ineffective assistance claims all fall. Now, you're conceding that the district court did not provide adequate notice or explanation with regard to the conditions of supervised release, so a remand is appropriate as to those. That's correct, Your Honor, yes. And I think the record makes clear that at that point, I think the court sentenced Mr. Escobosa to a sentence that he wasn't expecting. There was a bit of confusion, and it sounds like he directly addressed the court again, and the court, in imposing simply the sentence, the conditions recommended by probation, it just was overlooked. There were other things happening at the time, and so there was just no discussion about those. If there are no further questions, the government will rest on its brief. Thank you, Your Honors. Thank you. Do you challenge any of the other conditions of supervised release beyond 4, 5 and 8? No. Those we believe are not reasonably related to the crime and Mr. Escobosa's behavior. 4, 5 and 8 certainly are the big ones for us, and the government has conceded they were improperly imposed. Now, with respect to the government's position, as I hear it, the government contends that they didn't argue that the bail was violated by these other actions. They just focused on their findings and their findings of fact about the improper access to the Internet, and the judge clearly understood that. But that's not what's reflected in the judge's reasons for sentencing. The judge says unwillingness to reform his behavior as evidenced by noncompliance with bail conditions and unauthorized access of the Internet. It's conjunctive, meaning he looked at both of them. If he just wanted to say unauthorized access of the Internet, he would have said that. The second thing is the testimony during the violation hearing was anything but clear on Agent Shirani. She testified she didn't even know the date and the time that certain access occurred to the Internet. She didn't know what activity other than the computer accessed YouTube, which she conceded could have been for educational purposes. And more importantly, the FBI agent testified that there was no evidence of any criminal activity in any of the forensic reports that she made. So there was alleged access on two computers, the home built and the laptop. With respect to the home built, there was no proof that he accessed anything improperly or accessed anything at all. Their theory was he knew how to do something by putting the computer in some kind of safe mode like he was a computer expert. With respect to the laptop, I submit that counsel missed the whole issue there. The whole issue was, did anyone other than the appellant use this computer to do a test run? So that computer, that laptop was brought in the box to pretrial services to install the monitoring software. But all computers, all computers before they are marketed are tested by somebody. So there could have been access to an Internet, whatever site, at the testing site before it was packaged and brought. So there was no inquiry into any of that with respect to counsel. The last thing I want to say, which goes back to my ineffective counsel claim, is counsel didn't even have the facts right. Counsel argued at sentencing that all this activity, access to the Internet, the child pornography stuff, occurred one day during the course of four hours. When the plea that my client entered said it occurred over two years, and that's what the indictment alleged. So the attorney didn't even have the most basic facts correct. She apparently didn't even read the plea transcript and the indictment. Thank you, Your Honors. Thank you both. And we'll take the matter under advisement.